# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HEALTHCARE SERVICES GROUP, INC.

### DEFENDANTS

HIGHLANDS NURSING AND REHABILITATION CENTER, LLC, d/b/a HIGHLANDS NURSING AND REHABILITATION

**(b)** County of Residence of First Listed Plaintiff   Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Jefferson (Kentucky)
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Craig A. Hirneisen, Esquire, Stevens & Lee
111 North Sixth Street, P.O. Box 679, Reading, PA 19603
(610) 478-2229

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $107,490, plus interest, attorneys fees, and costs

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/22/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Steven J. Adams, Esquire
Attorney I.D. No. 56293
Craig A. Hirneisen, Esquire
Attorney I.D. No. 209108
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603-0679
(610) 478-2133/2229

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEALTHCARE SERVICES GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| HIGHLANDS NURSING AND | : | |
| REHABILITATION CENTER, LLC, d/b/a | : | |
| HIGHLANDS NURSING AND | : | |
| REHABILITATION, | : | |
| | : | |
| Defendant. | | |

## COMPLAINT

Plaintiff Healthcare Services Group, Inc. ("**HCSG**" or "**Plaintiff**"), by and

through its counsel, Stevens & Lee, P.C. complaining against Defendant, avers as follows:

1. HCSG is a Pennsylvania corporation with its principal place of business at

3220 Tillman Drive, Suite 300, Bensalem, Pennsylvania 19020.

2. Defendant Highlands Nursing and Rehabilitation Center, LLC, d/b/a Highlands

Nursing and Rehabilitation ("**Highlands**" or "**Defendant**"), is a Kentucky limited liability

company with a last known address of 1705 Stevens Avenue, Louisville, Kentucky 40205.

3.  Highlands operates a residential health care facility (the **"Facility"**) at 1705 Stevens Avenue, Louisville, Kentucky 40205.

## JURISDICTION AND VENUE

4.  The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5.  This Court has personal jurisdiction over Highlands under Pennsylvania's long-arm statutes, 42 Pa. C.S.A. § 5301 and 42 Pa. C.S.A. § 5322, and the United States Constitution.

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this action occurred in the Eastern District of Pennsylvania.

7.  Moreover, Highlands consented to the exclusive jurisdiction and venue of this action in the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Bucks County pursuant to Section 6.6 of the Service Agreement (hereinafter defined).

## The Service Agreement

8.  On or about February 3, 2012, HCSG and Highlands entered into a Housekeeping/Laundry Service Agreement (the **"Service Agreement"**).

9.  A true and correct copy of the Service Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

10.  Pursuant to Section 1 of the Service Agreement, HCSG agreed to provide all necessary management, supervision, labor, and materials necessary to perform housekeeping and laundry services on the premises of Highlands' Facility.

11.  Pursuant to Section 2 of the Service Agreement, Highlands was required to pay HCSG the sum of $468,000.00 per year, to be paid in monthly payments in the amount of $39,000.00 in consideration of HCSG providing the aforementioned services to Highlands.

12.  Pursuant to Section 3 of the Service Agreement, the term of the Service Agreement commenced on March 1, 2012 and continued unless cancelled by either party.  The Service Agreement could be cancelled by either party 120 days after the services began, provided a thirty (30) day written notice was given.

13.  On or about September 24, 2012, a new company—Diversacare—took over the operations of the Facility from Highlands.

**Highland's Failure to Pay Monies Due to HCSG Under the Services Agreement**

14.  Highlands has failed to pay HCSG for all of the services rendered by HCSG to Highlands pursuant to the Service Agreement in accordance with the terms of the Service Agreement.

15.  The failure of Highlands to make payments to HCSG when due under the Service Agreement constitutes a breach of that agreement.

16.  As a direct and proximate result of Highlands' breach of its contractual duties, HCSG has been and continues to be damaged.

17.  As of October 17, 2012, the total outstanding, past due indebtedness owed by Highlands to HCSG pursuant to the Service Agreement was $107,490.00.

18.  Section 6.10 of the Service Agreement provides that "If suit is brought to enforce any of the terms or conditions of this [Service] Agreement, the prevailing party shall be entitled to recover such sums as the court may fix as costs and reasonable attorney fees, in addition to any other relief to which it may be entitled."

WHEREFORE, plaintiff Healthcare Services Group, Inc., demands that judgment be entered in its favor against defendant Highlands Nursing and Rehabilitation Center, LLC, in the amount of $107,490.00, plus interest, reasonable attorneys' fees, and costs of suit.

STEVENS & LEE

By_____

Steven J. Adams
Attorney I.D. No. 56293
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2133
sja@stevenslee.com

and

Craig A. Hirneisen
Attorney I.D. No. 209108
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2229
cah@stevenslee.com

Attorneys for Plaintiff
Healthcare Services Group, Inc.

# Exhibit A

*HIGHL 14*

## HOUSEKEEPING/LAUNDRY SERVICE AGREEMENT

**AGREEMENT**, made this 3RD day of February, 2012 by and between HEALTHCARE SERVICES GROUP, INC. (hereinafter referred to as "Healthcare"), a Pennsylvania corporation, with offices at 3220 Tillman Drive, Glenview Corporate Center, Suite 300, Bensalem, PA 19020

and

Highlands Nursing and Rehab Center, LLC a Kentucky Limited Liability Company (hereinafter referred to as "Client"), which operates the nursing home d/b/a Highlands Nursing and Rehabilitation located at 1705 Stevens Ave, Louisville, KY, 40205 (hereinafter referred to as the "Facility").

The parties hereto, intending to be legally bound, agree as follows:

### 1. SCOPE OF WORK:

Healthcare will provide all management, supervision, labor and materials necessary to perform the housekeeping and laundry services on the premises of the Facility.  Ownership of all existing housekeeping equipment is transferred to and will be utilized by Healthcare in performing its duties.  Any repair of, replacement of, or addition to, housekeeping equipment will be Healthcare's responsibility.  The value and utilization of the existing housekeeping equipment was a consideration in determining the service price.

The scope of work described will be in compliance with the specifications and schedules attached hereto as Exhibits I and II to this Agreement.

### 2. AGREEMENT AMOUNT:

In consideration of Healthcare providing the aforesaid services, Client will pay to Healthcare the sum of $ 468,000.00 per year (based on a 365 day year), said sum to be paid in monthly payments, with payments due in the amount of $ 39,000.00 on the last date through which the monthly services are rendered.  Sales taxes, if applicable, will be added to the service billing and Healthcare shall be responsible for remittance of such taxes to the proper authorities.  Healthcare and Client agree to review the service billing amount annually.

### 3. TERM:

The term of this Agreement shall commence on 3/1/2012  and will continue unless terminated as herein provided.  This Agreement can be canceled by either party at any time after 120 days after the services begin, upon 30 days written notice.  No notice of cancellation by Client shall be effective unless accompanied by payment of all amounts then due and owing to Healthcare for services provided up to and including the date of the notice.  All other amounts due to Healthcare, including for services provided up to and including the effective date of the cancellation, shall be due and payable on the effective date of cancellation.

### 4. INSURANCE COVERAGE, EMPLOYEE TAXES, RATES AND BENEFITS:

Healthcare will comply with all applicable Federal, state and local laws and regulations (including minimum wage requirements) regarding employment, compensation,

I

benefits and payment of its employees. Healthcare will pay FICA, FUTA and worker's compensation and all applicable payroll and other taxes for its employees. Notwithstanding any adjustments in paragraph 2, should any Federal, state or locally mandated increase occur in any of these categories the service billing will be adjusted to reflect these changes. Healthcare will notify Client in writing of the increase and effective dates of these changes.

## 5. CLIENT COOPERATION:

During the term this Agreement, the Facility will be fully available to Healthcare so that the aforesaid services may be performed by Healthcare. Further, during the term of this Agreement, Customer will provide the necessary utilities, including but not limited to electricity and water, and reasonable access to the Facility's telecommunications, computer, e-mail, voice mail and similar systems, as necessary for Healthcare to perform the services.

## 6. GENERAL PROVISIONS:

6.1   Any notices given by either party to the other shall be given by mail (which shall be registered or certified, postage prepaid, with return receipt requested) or by courier. Notices by mail or courier shall be sent to the recipient at the address in the introductory paragraph of this Agreement and shall be deemed given five (5) days after mailing. Notices by courier shall be deemed given on the business day after delivery. Each party may change its address by written notice in accordance with this paragraph.

6.2   Neither party, in the performance of this Agreement, shall discriminate against any patient, employee, or other person because of race color, creed, sex, ancestry national origin, or handicap. Both parties to this Agreement shall comply with the requirements of Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973.

6.3   Healthcare shall, until four years after the expiration of each contract year of this Agreement, upon written request, make available to the Secretary of the Department of Health and Human Services (HHS), or the Secretary's duly authorized representative, or upon request to the Controller General or the Controller General's duly authorized representatives this Agreement and such books documents and records pertaining to services provided during such contract year that are necessary to certify the nature and extent of costs under this Agreement. The availability of Healthcare's books, documents and records shall be subject at all times to such criteria and procedures for seeking or obtaining access as may be promulgated by the Secretary of HHS in regulations and other applicable laws. Healthcare's disclosure under this paragraph shall not be construed as a waiver of any other legal rights to which Healthcare or the Client may be entitled. Each party will notify the other within 10 days of receipt of a request for access.

If pursuant to this Agreement, any of Healthcare's duties and obligations are to be carried out by any individual or entity under a contract with Healthcare with a value of $10,000 or more over a twelve month period, and that subcontractor is to a significant extent, associated or affiliated with, owns, or is owned by or has control of or is controlled by Healthcare, each such subcontractor shall itself be subject to the

2

access requirements and Healthcare shall require such subcontractor to meet the access requirements.

6.4 During the term of this Agreement, and for a period of one year after the termination of this Agreement, neither party shall hire management personnel (e.g. Account Managers, supervisors or District Managers) (a) still employed by the other; or (b) who had been employed by the other at any time within one year before or after the termination of this Agreement.

6.5 Healthcare and Client shall see that to the best of their ability the Facility's housekeeping and/or laundry departments are kept in compliance in all material respects with applicable state and federal regulations, to the extent within their respective control

6.6 This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. Client consents to exclusive jurisdiction and venue in the Court of Common Pleas of Bucks County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania

6.7 This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, personal representatives and assigns. This Agreement may not be assigned by either party without the written consent of the other.

6.8 The parties executing this Agreement on behalf of their respective entities represent that they are authorized to sign this Agreement on behalf of such entity and that the other party is relying on such representation.

6.9 This Agreement supersedes any and all other agreements related to the services provided for herein, either oral or written between the parties hereto with respect to the engagement of Healthcare by the Client and contains all the covenants and agreements between the parties with respect to its subject matter. This Agreement shall not affect or modify any other agreements between the parties with respect to the payment of any existing debts or obligations owed by the Client to Healthcare.

6.10 Attorney Fees: If suit is brought to enforce any of the terms or conditions of this Agreement, the prevailing party shall be entitled to recover such sums as the court may fix as costs and reasonable attorney fees, in addition to any other relief to which it may be entitled.

3

IN WITNESS WHEREOF, the parties hereto, or their duly authorized officers or agents, have executed, sealed and delivered this Agreement, in duplicate, intending to be legally bound hereby.

Highlands Nursing and Rehabilitation Center, LLC

Authorized Signature: *Karole Hamilton*

Name: KAROLE Y. HAMILTON
Title: ADMINISTRATOR

Date: 2-3-2012

HEALTHCARE SERVICES GROUP, INC.

Authorized Signature: *Brian Henriott*

Name: Brian Henriott
Title: Regional Director

Date: 2/3/2012

4

## EXHIBIT I

### Full service housekeeping and laundry service

Healthcare Services Group, Inc. will provide:

- Full time Supervisor to oversee the services provided
- District Manager to oversee operation
- All staffing responsibility including:
  - a) Salaries/wages
  - b) Taxes
  - c) Fringe benefits
  - d) Uniforms
- All housekeeping supplies and equipment listed on Exhibit II
- All laundry chemicals including:
  - a) Detergent
  - b) Bleach
  - c) Softener
  - d) Sour

All laundry equipment repairs will be the responsibility of the Client.

District Manager to oversee the operations (weekly visit)

Regional Management Support Team (monthly visit)

Corporate/Divisional Visit (quarterly)

Healthcare Services Group agrees to average 649 (including manager's hours) labor hours weekly per month

Healthcare Services Group agrees to leave facility with all paper and plastic for month that is billed should termination of contract occur.

5

## EXHIBIT II

The following is a list of supplies and chemicals provided by Healthcare Services Group, Inc.:

| | |
|---|---|
| Germicidal Detergent | Dust Mops and Handles |
| All Purpose Degreaser | Dust Cloths |
| Degreaser | Mops and Mop Handles |
| Ammoniated Stripper | Buff Pads |
| Floor Finish | Stripping Pads |
| Sealer (22% Solid) | All supplementary tools for |
| Glass Cleaner | light housekeeping |
| Ammonia | All laundry chemicals |
| Cleanser | |
| Bowl Cleaner | |
| Furniture Polish | |
| Metal Polish | |
| Carpet Shampoo | |

### Equipment

3 New Vacuums                                                      3 Personal Clothes Racks
2 New High Speed Burnishers
1 New Auto-Scrubber
1 New Slow Speed
6 New Housekeeping Carts
10 New Mop Buckets with Ringers
12 New Mop Sticks w/extra heads
2 Large Dust Mops Frames w/extra heads
6 Small Dust Mops Frames w/extra heads
30 Spray Bottles and Triggers
9 Lobby Dust Pans
3 Regular Brooms
10 Long Scrapers
20 Handheld Scrapers
Buffing/Refinishing Pads
Steel Wool Rolls
10 Toilet Swab Kits

All Housekeeping Equipment Repair & Replacement

Client will be responsible for the following supplies:

SL1 970285v1/104212.00001 Revised 1/18/2012